UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR TREVINO,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 1:19-cv-01632-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(ECF Nos. 21, 25, 27.) |

       This matter is before the Court on Plaintiff Salvador Trevino's ("Plaintiff") complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration to terminate Plaintiff's Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 8, 24.)

       At a hearing on February 2, 2021, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

///

///

1

**A. Whether the ALJ Committed Legal Error in Formulating Plaintiff's RFC**

Plaintiff argues that the Administrative Law Judge ("ALJ") committed legal error by failing to adequately develop the record and improperly interpreting the medical data when formulating Plaintiff's Residual Functional Capacity ("RFC"). (ECF No. 21.) Here, the only medical opinions in the case were from non-examining State agency medical consultants. Those consultants opined that Plaintiff had no severe impairments. Additionally, those consultants failed to review over 1000 pages of medical evidence. Thus, Plaintiff argues, the ALJ lacked substantial evidence for her conclusion that Plaintiff could perform light work.

Specifically, the ALJ found that, since January 22, 2016, Plaintiff has had the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (A.R. 20-22.)

The Court first examines Plaintiff's contention that the ALJ had a duty to develop the record by seeking different or supplemental medical opinions based on the entire medical record.

The ALJ did not have a duty to further develop the record solely because the record contained medical records post-dating the non-examining State agency physicians' review. "The mere existence of medical records post-dating a State agency physician's review does not in and of itself trigger a duty to further develop the record." *Lamas v. Saul,* 2020 WL 6561306, at *10 (E.D. Cal. Nov. 9, 2020) (citing *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of State agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC); *see also Mayes,* 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Although the State agency physicians' RFC assessment did not consider Plaintiff's subsequent medical records, the ALJ did consider and account for these records in developing the RFC. For example, in formulating Plaintiff's RFC, the ALJ reasoned:

> Since 2015, although the claimant has often had tenderness in various joints, he

> has generally demonstrated normal ranges of motion and normal motor function throughout his musculoskeletal system (Exhibits B3F, B4F, B7F, B10F, B11F, B12F, B13F, and B14F). The treatment records also frequently mention that there is little clinical evidence of active autoimmune or inflammatory disease (Exhibits B4F, B10F, B14F, and B16F). In addition, very few positive clinical signs such as fatigue, sleepiness, or lethargy have been observed at physical examinations. Moreover, the treatment records reflect that he has been doing well generally, has experienced only occasional aches and pain, and has been responsive to pain medications (Exhibits B4F, B10F, B14F, and B16F). Although he alleges drowsiness, lightheadedness, and sleepiness from the use of medications, the evidence of record documented no significant concerns from any medical source, which suggests that these side effects are generally mild. He allegedly uses crutches sometimes, but the treatment records did not document a prescription for or observed usage of any assistive device (Exhibit B3E). Although he qualifies for in-home support services, the treatment records reflect that he is generally able to perform activities of daily living when he is on pain medication (Exhibits B7E, B7F, B12F, and B13F).

(A.R. 21.) In support of this reasoning, the ALJ cited to Plaintiff's treatment records ranging from February 11, 2015, through May 18, 2018. (*See id.*; A.R. 416-553, 569-733, 743-1754, 1765-1819.) Many of these records are dated after the opinions of State agency medical consultants H. Jone, M.D. and G. Bugg, M.D., which were rendered on January 21, 2016, and March 8, 2016, respectively. (*See* A.R. 555, 737.) The ALJ also cited to many of these same treatment records, including those post-dating the State agency consultants' review, in finding that the State agency medical consultants' opinions were supported by Plaintiff's generally adequate musculoskeletal and motor function, the well-documented effectiveness of Plaintiff's pain medication, and treatment records indicating that Plaintiff's lupus and rheumatoid arthritis were well controlled. (A.R. 21-22.) As this analysis shows, the ALJ found the medical records to be consistent with the State agency consultants' conclusion that Plaintiff had very significant medical improvement.

Furthermore, Plaintiff does not point to anything in the subsequent medical records that is materially inconsistent with the State agency physicians' opinions. Indeed, Plaintiff solely argues that the State agency consultants "failed to review over 1000 pages of medical evidence" and the ALJ should have called a medical expert to review this "new and critical information[.]" (ECF No. 21 at 6-8.) According to Plaintiff, the ALJ rendered her own medical opinion and relied upon her "lay estimation that the clinical findings support medical improvement and ultimately a residual functional capacity for light work[.]" (*Id.* at 8-9.) In his opposition, the Commissioner

noted that Plaintiff failed to articulate how the subsequent evidence contradicted the ALJ's assessment. (ECF No. 25 at 12-13.) However, on reply, Plaintiff specifically "decline[d] Defendant's invitation [to] 'play doctor'" and instead reiterated that the RFC is impermissible lay speculation. (ECF No. 27 at 3.)

Because the ALJ did consider the subsequent medical records and found that they were consistent with the State agency consultants' opinions and the ultimate RFC, the ALJ did not err in failing to obtain another medical opinion based on the medical records produced after the opinions of the State agency consultants.

The Court next looks to whether there is substantial evidence for the ALJ's RFC notwithstanding that the State agency medical consultants found the Plaintiff had no severe impairments, and thus did not recommend specific work restrictions based on those impairments.

In evaluating the medical opinion evidence in the record, the ALJ reasoned as follows:

> As for the opinion evidence, the State agency medical consultants found that the claimant had no significant physical limitations (Exhibits B5F and B8F). These opinions allowing the claimant to perform some work are given some weight because they are supported by the claimant's generally adequate musculoskeletal and motor function (Exhibits B3F, B4F, B7F, B10F, B11F, B12F, B13F, and B14F). In addition, the opinions are consistent with the well-documented effectiveness of the claimant's pain medications (Exhibits B4F, B7F, B10F, B12F, B13F, B14F, and B16F). Moreover, based on the treatment records, his lupus and rheumatoid arthritis appear to be well controlled (Exhibits B4F, B10F, B14F, and B16F). Furthermore, State agency medical consultants are highly qualified physicians who are experts in Social Security disability programs. However, the opinions overstate the claimant's physical capacity; the State agency consultants did not adequately consider the claimant's subjective complaints.

(A.R. 21-22.)

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating the RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

The determination of a claimant's RFC is wholly within the province of the ALJ. *See*

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). The RFC assessment is based on all the evidence in the record, and it is the ALJ's duty to consider and weigh that evidence. *Lingenfelter,* 504 F.3d at 1042.

In reviewing findings of fact with respect to such determinations, this Court determines whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

Here, there is substantial evidence supporting the ALJ's finding that Plaintiff could perform light work. The State agency physicians in this case opined that Plaintiff's impairments were non-severe and therefore did not identify any functional limitations. (A.R. 555, 737-38.) Plaintiff essentially argues that the ALJ's RFC finding lacks the support of substantial evidence because the State agency physicians found that Plaintiff's impairments were non-severe rather than analyzing Plaintiff's functional limitations. However, the non-severe findings were a conclusion that Plaintiff had no functional limitations. Indeed, the ALJ recognized that the State agency physicians' findings that Plaintiff had no significant physical limitations meant that Plaintiff could perform some work. (A.R. 21.) Those findings were consistent with the medical record, including medical evidence dated subsequent to the State agency physicians' review. Accordingly, the ALJ cited a multitude of medical records indicating that Plaintiff had generally adequate musculoskeletal and motor function, his pain medication was effective, and his lupus and rheumatoid arthritis were well controlled, none of which Plaintiff challenges. (*See* A.R. 21-

22.)

Considering the record as a whole, the ALJ's RFC finding was supported by substantial evidence.

**B. Conclusion**

In light of the foregoing, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **February 16, 2021**                    /s/ Erica P. Grosjean
                                                  UNITED STATES MAGISTRATE JUDGE